### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

EMILY YOUSIF and JODY YOUSIF,

       Plaintiffs,

v.


MIKE YOUSIF, JOHN YOUSIF,
ANTHONY YOUSIF, JENNIFER A. ABBO,
HANNI KASSAB, Jr. , RONNI KASSAB,
LA INSURANCE AGENCY, INC.,
a Michigan corporation,
PREMIER INSURANCE AGENCY, INC.,
a Michigan corporation,
ANTHONY YOUSIF INVESTMENT COMPANY, LLC,
a Michigan limited liability company,
GREAT LAKES ADVANTAGE, INC. ,
a Michigan corporation,
GREAT LAKES ADVANTAGE II, INC. ,
a Michigan corporation
7 MILE & LAUDER, LLC,
a Michigan limited liability company,
AUSTIN HIRSCHHORN, and
AUSTIN HIRSCHHORN, PC,
a Michigan professional corporation,

       Defendants.

Case: 2:06-cv-15389
Assigned To: Rosen, Gerald E
Referral Judge: Whalen, R. Steven
Filed: 12-05-2006 At 11:36 AM
CMP YOUSIF VS YOUSIF, ET AL (LE)

                               /

ANDREW J. MUNRO (P30304)
MUNRO AND ZACK, P.C.
Attorneys for Plaintiff
363 West Big Beaver Road, Ste. 450
Troy, MI 48084
(248) 928-9000
(248) 928-9001 facsimile
amunro@munroplc.com

                               /

### VERIFIED COMPLAINT and JURY DEMAND

Now come the Plaintiffs, Ms. Emily Yousif and Mr. Jody Yousif, by and through their

attorneys, MUNRO AND ZACK, P.C.,and for their Complaint against the Defendants,   state the following:

## COMMON AND JURISDICTIONAL ALLEGATIONS

1.     Plaintiff Emily Yousif ("Emily") is a resident of the City of West Bloomfield, Oakland County, State of Michigan.

2.     Plaintiff Jody Yousif ("Jody Yousif") is a resident of the City of West Bloomfield, Oakland County, State of Michigan.

3.     Defendant Mike Yousif ("Mike Yousif") is a resident of the City of Orchard Lake, Oakland County, State of Michigan, and at all time pertinent herein, as more fully described herein, was a member of the Yousif Criminal Enterprise, a control person of Defendants LA Insurance Agency, Inc., Premier Insurance Agency IV, Inc., Anthony Yousif Investment Company, LLC, Great Lakes Towing, 7 Mile & Lauder, LLC, and knowingly engaged in the illegal conduct described herein within the Michigan Counties of Oakland and Wayne.

4.     Defendant John Yousif ("John Yousif") is a resident of the Township of Bloomfield Hills, Oakland County, State of Michigan, and at all time pertinent herein, as more fully described herein, was a member of the Yousif Criminal Enterprise, a control person of Defendants LA Insurance Agency, Inc., Premier Insurance Agency IV, Inc., Anthony Yousif Investment Company, LLC, Great Lakes Towing, 7 Mile & Lauder, LLC, and knowingly engaged in the illegal conduct described herein within the Michigan Counties of Oakland and Wayne.

5.     Defendant Anthony Yousif ("Anthony Yousif") is a resident of the City of Orchard Lake,  Oakland County, State of Michigan, and at all time pertinent herein, as more fully described herein, was a member of the Yousif Criminal Enterprise, a control person of Defendants LA

Insurance Agency, Inc., Premier Insurance Agency IV, Inc., Anthony Yousif Investment Company, LLC, Great Lakes Towing, 7 Mile & Lauder, LLC, and knowingly engaged in the illegal conduct described herein within the Michigan Counties of Oakland and Wayne.

6.     Jennifer A. Abbo ("Abbo") is a resident of West Bloomfield, Oakland County, State of Michigan, and at all time pertinent herein, as more fully described herein, was a member of the Yousif Criminal Enterprise, a control person of Premier Insurance Agency IV, Inc., Great Lakes Towing, and knowingly engaged in the illegal conduct described herein within the Michigan Counties of Oakland and Wayne.

7.     Defendant Hannie Kassab, Jr. ("Hanni Kassab, Jr.") is a resident of West Bloomfield, Oakland County, State of Michigan, and at all time pertinent herein, as more fully described herein, was a member of the Yousif Criminal Enterprise, a control person of Defendants LA Insurance Agency, Inc., Premier Insurance Agency IV, Inc., Great Lakes Towing, and knowingly engaged in the illegal conduct described herein within the Michigan Counties of Oakland and Wayne.

8.     Ronni Kassab ("Ronni Kassab") is a resident of Wixom, Oakland County, State of Michigan, and at all time pertinent herein, as more fully described herein, was a member of the Yousif Criminal Enterprise, a control person of Defendants LA Insurance Agency, Inc., Premier Insurance Agency IV, Inc., Great Lakes Towing, and knowingly engaged in the illegal conduct described herein within the Michigan Counties of Oakland and Wayne.

9.     Austin Hirschhorn is a resident of the City of Huntington Woods, Oakland County, State of Michigan, is an attorney licensed to practice law in the State of Michigan, and, as more fully described herein, was a member of the Yousif Criminal Enterprise, and knowingly engaged in the illegal conduct described herein within the Michigan Counties of Oakland and Wayne.

10. Each of the aforementioned individual Defendants are culpable persons under the Racketeering Influenced and Corrupt Organizations Act ("RICO") 18 USCA §1961, et seq.

11. Each of the aforementioned individual and Defendants engaged in illegal activities in violation of RICO, and which have caused damages to Plaintiffs Emily and Jody Yousif.

12. Defendant LA Insurance Agency, Inc., ("LA Insurance") is a Michigan Corporation (CID # 383595), whose principal place of business is located at 21745 West 8 Mile, Detroit, MI 48219. As set forth more fully below, LA Insurance is engaged in interstate commerce and was used by the Defendants as a front company for the operation of the illegal enterprises engaged in racketeering activities as alleged herein.

13. Defendant Premier Insurance, Inc., ("Premier Insurance") is Michigan corporation (CID # 05699C), whose principal place of business is located at 8912 West 8 Mile, Royal Oak Township, MI 48220. As set forth more fully below, Premier Insurance is engaged in interstate commerce and was used by the Defendants as a front company for the operation of the illegal enterprises engaged in racketeering activities as alleged herein.

14. Defendant Anthony Yousif Investment Company, LLC, ("Anthony Yousif Investment Co.") is a Michigan Limited Liability Company (CID# B46549), whose registered office address is 21745 West 8 Mile, Detroit, MI 48219. As set forth more fully below, Anthony Yousif Investment Co. was used by the Defendants as a front company for the operation of the illegal enterprises engaged in racketeering activities as alleged herein.

15. Defendant Great Lakes Advantage, Inc., ("Great Lakes Advantage") is a Michigan corporation (CID# 16363A) whose registered office address is 21745 West 8 Mile, Detroit, MI 48219. As set forth more fully below, Great Lakes Advantage is engaged in interstate commerce

and was used by the Defendants as a front company for the operation of the illegal enterprises engaged in racketeering activities as alleged herein.

16.     Defendant Great Lakes Advantage II, Inc., ("Great Lakes Advantage II") is a Michigan corporation (CID# 28848D) whose agent is Defendant Hirshhorn, and whose registered office address is 101 West Big Beaver Rd., Suite 1050, Troy, MI 48084. As set forth more fully below, Great Lakes Advantage II is engaged in interstate commerce and was used by the Defendants as a front company for the operation of the illegal enterprises engaged in racketeering activities as alleged herein.

17.     Defendant 7 Mile & Lauder, LLC, ("7 Mile & Lauder") is a Michigan Limited Liability Company (CID# B1428C) whose registered office address is 21745 West 8 Mile, Detroit, MI 48219. As set forth more fully below, 7 Mile & Lauder was used by the Defendants as a front company for the operation of the illegal enterprises engaged in racketeering activities as alleged herein.

18.     Defendant Austin Hirschhorn, PC, ("Hirschhorn PC") is a Michigan Professional Corporation (CID # 251926), whose and whose registered office address is 101 West Big Beaver Rd., Suite 1050, Troy, MI 48084. As set forth more fully below, Hirschhorn PC is engaged in interstate commerce and was used by the Defendants as a front company for the operation of the illegal enterprises engaged in racketeering activities as alleged herein.

19.     The entities identified in paragraphs 12 through 18 as Defendants are culpable persons under the Racketeering Influenced and Corrupt Organizations Act ("RICO") 18 USCA §1961, et seq., and as more fully set forth below, each of them is engaged in illegal activities in violation of RICO which have caused damages to the Plaintiffs, and each is a member of the RICO enterprise,

specifically the Yousif Criminal Enterprise.

20.     As set forth more fully below, based upon information and belief, within the ten (10) years prior to the filing of this lawsuit, the entities identified in paragraphs 12 through 18 ("Defendant Entities") were used as fronts to conduct the following activities by the individual Defendants identified in paragraphs 3 through 9 ("Individual Defendants"), and/or one or more the Individual Defendants engaged in the following acts, which activities and acts constitute Racketeering Activity in violation of 18 USCA §1961(1) in furtherance of the Yousif Criminal Enterprise, to wit:

a.    Engaging in Wire Fraud in violation of 18 USCA § 1341,

b.    Engaging in Mail Fraud in violation of 18 USCA §1343,

c.    Engaging in acts of murder and the solicitation of murder for hire in violation of 18 USCA § 1958 and Michigan penal statutes,

d.    Engaging in the purchase and possession of illegal narcotic drugs, specifically marijuana, cocaine, and heroin, for the purpose of illegally distributing the same in violation of the federal Controlled Substances Act, being 21 USCA §801 et. seq,

e.    Engaging in Bank Fraud by obtaining money from a financial institution using false and forged mortgage documents in violation of 18 USCA §1344,

f.    Engaging in the loaning of money at illegal rates of interest, i.e. loan sharking, in violation of 18 USCA § 891,

g.    Operating an illegal gambling business in violation of 18 USCA §1955 and Michigan penal statutes,

h.    Paying bribes to government officials in violation of federal and Michigan statutes,

i.    Unlawfully evading the payment of income taxes in violation of 26 USCA §7201,

j.    Engaging in money laundering in violation of 18 USCA §1956,

k.    Engaging in Monetary Transactions using proceeds from unlawful activity in violation of 18 USCA §1957,

l.    Engaging in Racketeering by traveling in interstate commerce, using the wires and/or mail to distribute the proceeds of unlawful activities in violation of 18 USCA §1952, to wit: the distribution of proceeds from the unlawful activities described in paragraphs a through k, above.

21.     This Court has jurisdiction over the RICO allegations brought in this matter pursuant

to 18 USCA §1964 as intepreted by the US Supreme Court in *Tafflin v. Levitt*, 493 U.S. 455, 110

S.Ct. 792 (1990).

22.     This Court has jurisdiction over the state law claims brought in this matter because

the damages sought are in excess of $25,000.00.

23.     Venue is proper pursuant to 18 USCA § 1965  because all of the Defendants reside

and/or transact business within the Southern Division of the Eastern District of Michigan, and

additionally, the unlawful conduct giving rise to the causes of action brought by the Plaintiff

occurred primarily within the district.

## GENERAL ALLEGATIONS

### I.      Pattern of Racketeering and Racketeering Activity

### A.      Overview of the Yousif Criminal Enterprise

24.     Defendant Mike Yousif is the father of Defendants John Yousif , Anthony Yousif,

and Jennifer Abbo (collectively the "Yousif Defendants") and of Plaintiff Jody Yousif. Defendant

Mike Yousif is also the paternal grand uncle of Defendants Hani Kassab and Roni Kassab.

Defendants John Yousif,  Anthony Yousif and Jennifer Abbo are siblings.  Defendants Hani Kassab

and Roni Kassab are first cousins. Plaintiff Emily Yousif is the mother of Plaintiff Jody Yousif and

Defendants John Yousif,  Anthony Yousif and Jennifer Abbo, and the ex wife of Defendant Mike

Yousif.

25.     At young ages, Plaintiff Emily Yousif and Defendant Mike Yousif separately

emigrated from Iraq to the United States with their respective families.  After arriving in the United

States, Plaintiff Emily Yousif and Defendant Mike Yousif met, married, started a family, and worked

together managing, then owning a series of party stores in the Detroit metropolitan area, the last

being "LA Party Store" located at Eight Mile and Lasher. Plaintiff Emily Yousif and Defendant Mike Yousif worked many long and hard years to achieve their American dream. By 1992, they had lawfully amassed a multi million dollar real estate portfolio of mostly commercial properties. But, beginning after 1992, when Defendant LA Insurance was started, Mike Yousif and his sons turned to crime, styling themselves after the fictional gangsters in the Godfather movie, Don Vito, Sonny and Michael Corleone, with Defendants Hanni Kassab, Jr. and Ronni Kassab as their Capos, and with Defendant Hirshhorn as their Consigliere. Very quickly the Yousif's American dream became a nightmare as the Yousif Defendants took steps to become the Caldean crime family equivalent to the Detroit Mafia's Zerilli family.

26.    In discernable phases, beginning in 1992, the Yousif Defendants' illicit careers flourished as they gained expertise and added new schemes, new scams, and new opportunities to their expanding criminal enterprise ("Yousif Criminal Enterprise"). As more fully described below, they first began to defraud and scam LA Insurance's customers from whom they stole millions of dollars. The Yousif Criminal Enterprise graduated to hosting big money poker games, began loan sharking, began buying and selling stolen property, engaged in credit card fraud, and then, graduating into the biggest of criminal leagues, the Yousif Criminal Enterprise began distributing narcotic drugs. Together with its own illicit profits, the Yousif Criminal Enterprise also began laundering money for one of Detroit's most vicious drug gangs. Based upon information and belief, the Yousif Criminal Enterprise bribed police and engaged in murder for hire to protect its racketeering activities from other criminals, legitimate police investigations, and to get street drug dealers to purchase drugs from the Yousif Criminal Enterprise instead of other drug suppliers.

27.    The Yousif Criminal Enterprise is now extensive and continues to grow like a

spreading cancer. It continues to engage in the racketeering activities described in paragraph 20. And, as more fully described below, the Yousif Criminal Enterprise now controls over 100 LA Insurance offices, see Exhibit A, and over 70 Premier Insurance offices, see Exhibit B, which are fronted by "legitimate" owners. The Yousif Criminal Enterprise takes a share from the millions of dollars from of profits generated by these offices' criminal activities which include the defrauding and scamming of their insurance customers. The LA Insurance and Premier Insurance offices' "legitimate" owners fronting for the Yousif Criminal Enterprise are persons related to the Yousif Defendants by either blood or marriage, and who trace their ethnic ancestry back to a specific tribal locale within Iraq.

**B.**     **Specific Predicate Acts and The Pattern of Racketeering Activity.**

       **i.**     **Criminal Convictions for Racketeering Activities**

     28.     During 2006, John Yousif was convicted of money laundering in the federal District Court for the Eastern District of Michigan on behalf of a major Detroit drug gang. The money transactions occurred, based upon information and belief, within one or more LA Insurance offices. Based upon information and belief, all traces of John Yousif's money laundering criminal case, including the charges against him and evidence of his conviction, have been sealed by a federal District Court Judge sitting in the Eastern District of Michigan. Based upon information and belief, the sealing of John Yousif's federal case file was because his money laundering client, i.e. the Detroit drug gang, put a contract out for his murder. Further, based upon information and belief, at least two members of a Detroit drug gang are in federal prison after being convicted of attempting to murder John Yousif.

     29.     In 1998, based upon information and belief, John Yousif, on behalf of the Yousif

Criminal Enterprise, began to commit credit card fraud. Based upon information and belief, the

Yousif Criminal Enterprise, having access to the LA Insurance customer's credit card information,

had bogus credit cards manufactured and encoded in Canada, imported the cards, and illegally sold

them on the streets of Detroit (hereinafter referred to as "Credit Card Fraud Scheme"). In 1998, John

Yousif was convicted of one or more crimes associated with the Credit Card Fraud Scheme and

served time in federal prison.

      30.    Based upon information and belief, Anthony Yousif was charged and convicted with

crimes connected with the Credit Card Fraud and did community service.

### ii.    Specific Racketeering Activities Constituting Predicate Acts and Pattern

      31.    In addition to being predicate acts themselves, the acts undertaken by members of the

Yousif Criminal Enterprise, which are more fully described below, constitute violations of:

        a.    Wire Fraud in violation of 18 USCA § 1341,
        b.    Mail Fraud in violation of 18 USCA §1343,
        c.    Evasion of income taxes in violation of 26 USCA §7201,
        d.    Engaging in Monetary Transactions using proceeds from unlawful activity in violation of 18 USCA §1957, and
        l.    Engaging in Racketeering by traveling in interstate commerce, using the wires and/or mail to distribute the proceeds of unlawful activities in violation of 18 USCA §1952.

The specific acts constituting predicate and continuing conduct engaged in by the Defendants on

behalf of the Yousif Criminal Enterprise are:

### a.    LA Insurance's Illegal Schemes and Scams

      (1)    LA Insurance, with 148 offices, and Premier Insurance, with 65 offices, are

separate insurance agencies, see Exhibit A. Some of these offices are

operated by separate corporations, see Exhibit C, but all offices of both

agencies are controlled by the Yousif Criminal Enterprise.

(2)     The typical LA Insurance and Premier Insurance customers is a person who needs a proof of automobile insurance certificate to purchase automobile license tabs from Michigan's Secretary of State, who is strapped for cash and cannot afford the required deposit to obtain insurance from more reputable insurance companies or agencies. Typical customers require a payment plan be spread over the insurance policy's term. A large percentage of customers have no intention of making any installment payment other than that which is required to obtain a proof of automobile insurance certificate. Typical customers are not familiar with insurance laws and regulations, have little formal education past high school, live modest lives earning modest incomes, and because LA Insurance or Premier Insurance is usually their last or only option for insurance, they are vulnerable to sharp and illegal business practices.

(3)     LA Insurance and Premier Insurance are required by state regulation to obtain the lowest cost insurance for its customers. Notwithstanding this duty, LA Insurance and Premier Insurance wrote the bulk of their policies through Titan Insurance Company ("Titan") located in Troy, Michigan. Titan's policies were almost always more expensive than other insurance company's comparable policies. The reasons for writing insurance through Titan were: 1) Titan paid a significantly higher commission, typically 15% (commission plus override) versus 10% from Michigan's insurance pool companies, and

2) Titan required only 18% of the total premium as a down payment to issue a proof of insurance certificate versus the 40% to 50% down payment required by Michigan's insurance pool companies. By Michigan regulation, whatever down payment was accepted, in return, the insurance company was required to provide not less than 45 days of insurance coverage. If only a 18% down payment was paid, another payment would have to be mailed by the customer to Titan, or delivered to a LA Insurance or Premier Insurance office, within 30 days, or the policy would lapse. Thus, if a customer paid the 18% down payment he/she would have valid insurance coverage for 45 days and be entitled to purchase license tabs.

(4) To insure that its clients chose Titan's more expensive policies, LA Insurance and Premier Insurance mis-quote the cost of insurance coverage from Titan's competitors so that the quote for Titan's comparable coverage appeared less expensive, when in fact it was not.

(5) Insurance premiums for the minimum amount of insurance coverage in Michigan varies in price depending upon a customer's age, zip code, and driving record. Other factors play a lesser role. Typically a LA Insurance or Premier Insurance customer, 30 years old and living in Detroit, would expect to pay a $500.00 premium for six months of the legal minimum of automobile insurance coverage. The economics to the Yousif Criminal Enterprise of just earning a commission from the sale of a $500.00 policy were minimal. Even at a 15% commission rate, the Yousif Criminal

Enterprise would only earn $75.00 in commissions. And if the customer only paid an 18 % down payment, i.e.$90.00, the Yousif Criminal Enterprise's commission would only be $13.50.

(7)     To increase its profits, the Yousif Criminal Enterprise created Great Lakes Towing and Great Lakes Towing Advantage, and a towing service contract ("Towing Contract"). Customers were told that to obtain automobile insurance coverage and pay only an 18% down payment, they also had to purchase a Towing Contract. Under Michigan's statutes and regulations, the Towing Contract created by the Yousif Criminal Enterprise was an insurance product that should have been underwritten by a regulated insurance company. Michigan statutes and regulations would have required the Towing Contract itself to be approved by Michigan's Insurance Commissioner before being offered for sale in Michigan. Lastly, it is a violation of Michigan statutes and regulations to require the purchase of a Towing Contract as a condition of purchasing automobile insurance. The terms of the Towing Contract were available to customers, but the price of the various coverage levels were not published. The coverage levels and maximum amount of possible reimbursement:

| Coverage Level | Maximum Amount of Possible Reimbursement | Maximum Number of Service Calls |
|---|---|---|
| A | $35.00 | 2 |
| B | $50.00 | 2 |

| C | $75.00 | 2 |
| D | $100.00 | 2 |

(8)    A Towing Contract's term was six (6) months making it conterminous with the term of insurance contracts. However, the Towing Contract terminated, or at least customers were told it terminated, if the customer's insurance policy lapsed.

(9)    Customers had to pay for their Service Call then seek reimbursement from Great Lakes Towing Advantage or Great Lakes Towing Advantage II the "underwriters" of the Towing Contracts. However, these "underwriters" were owned and controlled by the Yousif Criminal Enterprise. The mechanism for requesting a reimbursement was to call a telephone number, that was never answered, or submit a written request to a P.O. Box that was never responded to. At the time that LA Insurance and Premier Insurance were selling Towing Contracts, the Yousif Criminal Enterprise never intended that Great Lakes Towing Advantage or Great Lakes Towing Advantage II would ever really makes reimburses to customers. And in fact, almost no reimbursements were ever paid out by Great Lakes Towing Advantage or Great Lakes Towing Advantage II, or their predecessors, notwithstanding their contractual obligation to do so.

(10)    The cost charged customers for a Towing Contract, usually between $50.00 and $200.00, depended upon how much money a customer had available. To determine what a customer had, they were asked what money they had

available in cash or a credit card ("Available Funds") for insurance. Customers were told that to get the 18% down payment policy, they had to also purchase a Towing Contract. Because there were no published rates for the Towing Contract, the Yousif Criminal Enterprise "priced" the Towing Contract equal to the difference between their Available Funds and the amount of the 18% down payment. Continuing the example begun in paragraph b., above, wherein a typical customer's six month policy cost $500.00. If the customer had $250.00 in Available Funds, the Towing Contract would be priced at $160.00 [$250.00 less the minimum Titan down payment of $90.00 (18% of $500.00)]. Why would anybody pay $160.00 for a Towing Contract that would pay a maximum reimbursement of $100.00., because they had no alternative or they did not understand? Why would the Yousif Criminal Enterprise charge its customers so much, because if it only made its lawful commission, Titan would only pay $37.50 in commissions if all the customer's $250.00 in Available Funds went towards the cost of insurance. Under the above Towing Contract example, the Yousif Criminal Enterprise nets a total of $173.50, which is $160.00 for the Towing Contract plus $13.50 in commissions [$90.00 x 15%]. If all the customer's $250.00 in Available Funds went towards a more reputable insurance company's policy, the Yousif Criminal Enterprise would only be paid a 10% commission, or $25.00.

(11)    Prior the massive increase of offices, an average LA Insurance or Premier

Page 15 of 32

Insurance office would write 5 to 8 insurance polices a day, 6 days a week. Of these 30 -48 weekly policies, 90% would also include Towing Contracts priced at $150.00, paid mostly in cash. On average, each office generated between $4000 and $6000 of Towing Contract sales per week, or between $210,000 and $312,000 annually. If half of the LA Insurance or Premier Insurance offices existing today were average, the annual Towing Contract sales for the Yousif Criminal Enterprise would exceed $20,000,000.00 per year - mostly received in cash/currency from customers.

**b.      Engaging in acts of murder and the solicitation of murder for hire in violation of 18 USCA § 1958 and Michigan penal statutes**.

(1)      Based upon information and belief, the Yousif Criminal Enterprise was involved in the murder of an employee known as Bobby, who was murdered shortly after causing difficulties with one or more the the Yousif Defendants.

(2)      Based upon information and belief, the Yousif Criminal Enterprise was involved in the murder of Sam Konja. Mr. Konja had borrowed $50,000.00 from the Yousif Criminal Enterprise and could not repay the loan and its usurious interest rates.

**c.      Engaging in the purchase and possession of illegal narcotic drugs, specifically marijuana, cocaine, and heroin, for the purpose of illegally distributing the same in violation of the federal Controlled Substances Act, being 21 USCA §801 et. seq,**

(1)      Based upon information and belief, the Yousif Criminal Enterprise is actively engaged in the illegal sale of marijuana, cocaine and heroin.

(2)      Based upon information and belief, the Yousif Criminal Enterprise has illegal

relationships with Detroit Police who identify street drug dealers who are then approached to purchase their narcotic drugs from the Yousif Criminal Enterprise.

(3)     Based upon information and belief, the Yousif Criminal Enterprise has been successful in establishing a narcotic drug distribution system which has included, at times, working with Tommie Hodges, the head of a major Detroit based drug gang (the "Tommie Hodges Drug Gang"), who, in a federal forfeiture case in the District Court for the Eastern District of Michigan, Case # 04-80259, stipulated that he made at least $50,000,000.00 in profits from the illegal sale of narcotic drugs during a 2 or 3 year time frame.

(4)     As pled in paragraph 28, above, John Yousif was recently convicted of laundering money for the Tommie Hodges Drug Gang, and based upon information and belief, at least two (2) members of the Tommie Hodges Drug Gang were convicted in the federal District Court for the Eastern District of Michigan of attempting to murder John Yousif.

d.     **Engaging in Bank Fraud by obtaining money from a financial institution using false and forged mortgage documents in violation of 18 USCA §1344**

(1)     The Yousif Criminal Enterprise engaged in illegal money laundering through a variety of devices. Based upon information and belief, the money laundering schemes were utilized by the Yousif Criminal Enterprise in connection with the laundering of illicit drug profits of the Tommie Hodges

Drug Gang. Additionally, based upon information and belief, some of the money laundering fees charged the Tommie Hodges Drug Gang were paid to the Yousif Criminal Enterprise in kind, specifically heroin, cocaine and marijuana. The most common scheme used by the Yousif Criminal Enterprise was to acquire real estate using illicit cash through a variety of fronts, improve the real estate using illicit cash to fund construction costs, and then "sell" the improved property to either a Yousif Criminal Enterprise member/front or to a Tommie Hodges Drug Gang member. The "buyer" would then mortgage the property, pocket the mortgage proceeds, and within a year default on the mortgage. The Yousif Criminal Enterprise had "deals" with Loan Giant and Countrywide mortgage companies. These deals including the placement of members of the Yousif Criminal Enterprise into these mortgage companies as "loan officers" to facilitate the approval and closing of mortgages that otherwise would have been turned down by legitimate loan officers. Additionally, and in violation of Michigan statues and regulations, Loan Giant paid the Yousif Criminal Enterprise to have its LA Insurance offices solicit its insurance customers for mortgages. LA Insurance personnel would help its customers fill out mortgage loan applications and transmit them by facsimile to Loan Giant. Loan Giant would pay the Yousif Criminal Enterprise between $500.00 and $1,000.00, in cash/currency, for applications that resulted in mortgage closings.

(2)      To accomplish the acquisition and mortgaging of real estate for the purpose

of money laundering, real estate was obtained by the Yousif Criminal Enterprise by forging documents, including the false witnessing and false notarization by Defendants Hirschhorn and Hirschhorn PC, by accepting properties in payment of illegal gambling debts and/or illegal loans, or by conversion.

(3)    Cash money would used to acquire property and to fund construction projects. When mortgaging properties through Loan Giant and Countrywide, members the Yousif Criminal Enterprise/Tommie Hodges Drug Gang would be on both sides of the transaction. Properties would be evaluated by friendly appraisers, purchase agreements or closing papers falsified to evidence large down payments of the purported purchase price thus enabling a "no-docs" mortgage approval. The mortgage proceeds, essentially the laundered profits of criminal activity, would then be distributed to members of the Yousif Criminal Enterprise or the Tommie Hodges Drug Gang.

(4)    There are a number of pieces of real estate which were "mortgaged" by the Yousif Criminal Enterprise. Those which the Plaintiffs have knowledge of include the following:

    i.    Monies from the following properties were acquired by the Yousif Criminal Enterprise by filing false and fraudulent documents to obtain mortgages:

        -    4780 Dow Ridge, West Bloomfield, Michigan, through Countrywide

- 3707 Wards Point, Orchard Lake, Michigan

ii.    The following properties, or their money value, were acquired by the

Yousif Criminal Enterprise by filing false and forged deeds:

- 14847, 14855, 14867, 14875 and 14887 Gratiot, Detroit

  Michigan

- 29230 12 Mile Road and another contiguous parcel,

  Farmington Hills, Michigan

- 26221 Grand River, Redford, Michigan

c.    **Engaging in the loaning of money at illegal rates of interest, i.e. loan sharking, in violation of 18 USCA § 891 and Operating an illegal gambling business in violation of 18 USCA §1955 and Michigan penal statutes**

(1)    The Yousif Criminal Enterprise hosts illegal high stake poker games at one

or more LA Insurance office locations. These games are weekly and typically

include regular participants including Defendant Hirschhorn, and Mr. Lee,

together with invites who have included an NBA basketball star.

(2)    The Yousif Criminal Enterprise loans money, typically for seven days at a 3

for 5 rate, meaning that for every $300.00 you borrow, you repay $500.00

within seven (7) days, to its degenerate gambling customers.

(3)    The Yousif Criminal Enterprise would also hand deliver loan proceeds to

"borrowers" at Detroit's and Windor's Casinos.

(4)    Based upon information and belief, the following pieces of real estate were

taken in lieu of one or more loan repayments and/or in payment of gambling

debts/losses:

- 3565 Brookside, Bloomfield Hills, Michigan
- 14828, 14830, 14834, 14856 West 7 Mile, Detroit, Michigan and the stand alone building located across 7 Mile containing a dance studio and beauty supply business

## II.     The Racketeering Enterprise

32.     The Plaintiffs allege that the Defendants have come together as a group, the Yousif Criminal Enterprise, and are associated in fact and constitute an "enterprise" within the meaning of 18 USCA §1961(4), although the Yousif Criminal Enterprise is not a legal entity.

33.     The Defendants are separate and distinct individuals/entities from the Yousif Criminal Enterprise used for racketeering purposes in which they were, or are, a member or participant.

34.     The aforementioned Yousif Criminal Enterprise exists independently of any Defendant.

35.     The Yousif Criminal Enterprise exists independently of the pattern of unlawful racketeering activity described within this Complaint, specifically in paragraphs 31 through.

## III.    Racketeering Injuries

### A. To Plaintiff Emily Yousif

36.     As a result of the racketeering activities of the Yousif Criminal Enterprise , described above, Plaintiff Emily Yousif had her interests in real estate properties, the legitimate income of Mike Yousif, and her interests in her marital estate unlawfully taken from her.  Plaintiff Emily Yousif was recently divorced from Defendant Mike Yousif.  Prior to the divorce, and without the knowledge or consent of Plaintiff Emily Yousif, the Yousif Criminal Enterprise absorbed her marital assets and the income of Mike Yousif.  These assets were transferred into the Yousif Criminal

Enterprise by forging Emily Yousif's signature, and by the false notarization of her purported signature by Defendant Hirschhorn on transfer documents. During her divorce, members of the Yousif Criminal Enterprise under oath, falsely testified about having received, converted or sold her marital interest in these assets and in Defendant Mike Yousif's income. The value of the interests taken, stolen and/or converted by the Yousif Criminal Enterprise exceeds $2,500,000.00.

### B. To Plaintiff Jody Yousif

37.     The Yousif Criminal Enterprise converted from Plaintiff Jody Yousif his interest in several pieces of real estate and in several Michigan Limited Liability Companies. His interests in the real estate were taken by members of the Yousif Criminal Enterprise by filing false deeds and transfer documents, without Plaintiff Jody Yousif's knowledge or consent, and by the false notarization of his purported signature by Defendant Hirschhorn. The value of these properties and business interests exceeds $5,000,000.00.

## COUNT I
## RICO §1962(c)

38.     The allegations of paragraphs 1 through 37 are incorporated by reference as if each allegation was repeated word for word within this count.

39.     This Count is against the following all Defendants.

40.     The Yousif Criminal Enterprise is a RICO enterprise, as defined in 18 USCA §1961(4), which is engaged in, and whose activities affect interstate commerce. The Defendants are employed by or associated with the enterprise.

41.     As more specifically described in paragraphs 28 through 37, the Defendants agreed to and did conduct and participate in the conduct of the Yousif Criminal Enterprise's affairs through

a pattern of racketeering activity.

42.     As more specifically described in paragraphs 28 through 37, pursuant to and in furtherance of their fraudulent scheme, the Count 1 Defendants committed multiple related acts which violated the following statutes:

a.   Engaging in Wire Fraud in violation of 18 USCA § 1341,

b.   Engaging in Mail Fraud in violation of 18 USCA §1343,

c.   Engaging in acts of murder and the solicitation of murder for hire in violation of 18 USCA § 1958 and Michigan penal statutes,

d.   Engaging in the purchase and possession of illegal narcotic drugs, specifically marijuana, cocaine, and heroin, for the purpose of illegally distributing the same in violation of the federal Controlled Substances Act, being 21 USCA §801 et. seq,

e.   Engaging in Bank Fraud by obtaining money from a financial institution using false and forged mortgage documents in violation of 18 USCA §1344,

f.   Engaging in the loaning of money at illegal rates of interest, i.e. loan sharking, in violation of 18 USCA § 891,

g.   Operating an illegal gambling business in violation of 18 USCA §1955 and Michigan penal statutes,

h.   Paying bribes to government officials in violation of federal and Michigan statutes,

i.   Unlawfully evading the payment of income taxes in violation of 26 USCA §7201,

j.   Engaging in money laundering in violation of 18 USCA §1956,

k.   Engaging in Monetary Transactions using proceeds from unlawful activity in violation of 18 USCA §1957,

l.   Engaging in Racketeering by traveling in interstate commerce, using the wires and/or mail to distribute the proceeds of unlawful activities in violation of 18 USCA §1952, to wit: the distribution of proceeds from the unlawful activities described in paragraphs a through k, above.

43.     The acts set forth in paragraphs 28 through 37 constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

44.     Defendants have directly and indirectly conducted and participated in the conduct of the Yousif Criminal Enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. §1962(c).

45.     As direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. §1962(c), Plaintiffs Emily Yousif and Jody Yousif have been injured in their respective business and property as described in paragraphs 36 and 37.

WHEREFORE, the Plaintiffs request that this Court enter judgment against the Defendants, jointly and severally, pursuant to 18 USCA §1964(c) as follows:

A.     For Emily Yousif, compensatory damages in the amount of $2,500,000.00, trebled to $7,500,000.00,

B.     For Jody Yousif, compensatory damages in the amount of $5,000,000.00, trebled to $15,000,000.00, and

B.     Actual attorney fees and costs incurred by the Plaintiffs.

## COUNT II
## RICO §1962(a)

46.     The allegations of paragraphs 1 through 37 are incorporated by reference as if each allegation was repeated word for word within this count.

47.     This Count is against the all the Defendants.

48.     The Yousif Criminal Enterprise is a RICO enterprise, as defined in 18 USCA §1961(4), which is engaged in, and whose activities affect interstate commerce. The Defendants are employed by or associated with the enterprise.

49.     The Defendants used and invested income, derived from a pattern of racketeering activity, into businesses and enterprises whose activities affect interstate commerce, including, but not limited to the sale of automobile insurance.

50.     The Defendants' activities as described in paragraphs 28 through 37 constitute a pattern of RICO racketeering activity pursuant to 18 U.S.C. §1961(5).

51.     As direct and proximate result of the Defendants' racketeering activities and violations

of 18 U.S.C. §1962(a), the Plaintiffs have been injured in their business and property as more fully

described in paragraphs 36 and 37.

WHEREFORE, the Plaintiffs request that this Court enter judgment against the Defendants,

jointly and severally, pursuant to 18 USCA §1964(c) as follows:

> A.   For Emily Yousif, compensatory damages in the amount of $2,500,000.00, trebled to $7,500,000.00,
> B.   For Jody Yousif, compensatory damages in the amount of $5,000,000.00, trebled to $15,000,000.00, and
> B.   Actual attorney fees and costs incurred by the Plaintiffs.

## COUNT III
## RICO §1962(b)

52.   The allegations of paragraphs 1 through 37 are incorporated by reference as if each

allegation was repeated word for word within this count.

53.   The following Defendants are enterprises whose activities affect interstate and/or

foreign commerce. (the "Count III Enterprises"):

> a.   Defendant LA Insurance
> b.   Defendant Premier Insurance
> c,   Defendant Anthony Yousif Investment Co.
> d.   Defendant Great Lakes Towing
> e.   Defendant Great Lakes Towing Advantage
> f.   Defendant 7 Mile & Lauder, LLC
> g.   Defendant Austin Hirschhorn, PC

54.   The Yousif Criminal Enterprise is a RICO enterprise, as defined in 18 USCA

§1961(4), which is engaged in, and whose activities affect interstate commerce. The individual

defendants are members of the Yousif Criminal Enterprise.

55.   The individual Defendants have directly and indirectly acquired and maintained

interests in and control of the Count III Enterprises through the pattern of racketeering activity

described above in paragraphs 28 through 37 in violation of 18 U.S.C. §1962(b).

56.    The individual Defendants' activities as described in paragraphs 28 through 37 constitute a pattern of RICO racketeering activity pursuant to 18 U.S.C. §1961(5).

57.    As direct and proximate result of the Count III Defendants' racketeering activities and violations of 18 U.S.C. §1962(a), the Plaintiffs have been injured in their business and property as more fully described in paragraphs 36 and 37.

WHEREFORE, the Plaintiffs request that this Court enter judgment against the Defendants, jointly and severally, pursuant to 18 USCA §1964(c) as follows:

   A.    For Emily Yousif, compensatory damages in the amount of $2,500,000.00, trebled to $7,500,000.00,
   B.    For Jody Yousif, compensatory damages in the amount of $5,000,000.00, trebled to $15,000,000.00, and
   B.    Actual attorney fees and costs incurred by the Plaintiffs.

## COUNT IV
## RICO §1962(d)

58.    The allegations of paragraphs 1 through 37 are incorporated by reference as if each allegation was repeated word for word within this count.

59.    This count is against all Defendants.

60.    As set forth in paragraphs 28 through 37, the Defendants agreed and conspired to violate 18 USCA §1962(a) (b) and (c) by conspiring to: (1) use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise (18 USCA §1962(a)); (2) acquire or maintain interests in enterprises through a pattern of racketeering activity (18 USCA §1962(b)); and/or (3) conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity (18 USCA §1962(c)).

61.     Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in enterprises through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. The Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 USCA §1962(a), (b) and (c), in violation of 18 USCA §1962(d).

62.     As direct and proximate result of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 USCA §1962(d), the Plaintiffs have been injured in their business and property as described in paragraphs 36 and 37.

WHEREFORE, the Plaintiffs request that this Court enter judgment against the individaul Defendants, jointly and severally, pursuant to 18 USCA §1964(c) as follows:

A.     For Emily Yousif, compensatory damages in the amount of $2,500,000.00, trebled to $7,500,000.00,

B.     For Jody Yousif, compensatory damages in the amount of $5,000,000.00, trebled to $15,000,000.00, and

B.     Actual attorney fees and costs incurred by the Plaintiffs.

### COUNT V
### COMMON LAW CONVERSION

63.     The allegations of paragraphs 1 through 37 are incorporated by reference as if each allegation was repeated word for word within this count.

64.     The acts of the Defendants as alleged in paragraphs 36 and 37, together with the allegations in paragraphs 60 and 61 relating to the Defendants' conspiracy and joint adventure,

constitute the unlawful conversion of the Plaintiffs property.

WHEREFORE, the Plaintiffs request this Court enter a Judgment in their favor and against the Defendants, jointly and severally, as follows:

        A.     For Emily Yousif, compensatory damages in the amount of $2,500,000.00,

        B.     For Jody Yousif, compensatory damages in the amount of $5,000,000.00, and

        B.     Actual attorney fees and costs incurred by the Plaintiffs.

## COUNT VI
## STATUTORY CONVERSION

65.     The allegations of paragraphs 1 through 37 are incorporated by reference as if each allegation was repeated word for word within this count.

66.     The Yousif Criminal Enterprise received and its members aided and abetted in the concealment of the Plaintiffs' stolen, embezzled, misappropriated or converted property, namely, the property described in paragraphs 36 and 37, with an estimated value of $7,500,000.00.

67.     The individual Defendants received or aided in the concealment of the Plaintiffs' property, and they knew that such property was stolen, embezzled, misappropriated or converted.

68.     As a direct and proximate result of those actions, the Plaintiffs have suffered damages in the amount of at least $7,500,000.00, exclusive of interest, costs and attorney fees.

69.     Defendants' acts constitute a violation of MCLA 600.2919a and the Plaintiffs are entitled to a damage award of three times their actual damages sustained, plus actual costs and actual reasonable attorneys' fees.

WHEREFORE, the Plaintiffs request that this Court enter judgment against the individaul Defendants, jointly and severally, pursuant to MCLA 600.2919a as follows:

A.     For Emily Yousif, compensatory damages in the amount of $2,500,000.00, trebled to $7,500,000.00,

B.     For Jody Yousif, compensatory damages in the amount of $5,000,000.00, trebled to $15,000,000.00, and

B.     Actual attorney fees and costs incurred by the Plaintiffs.

## COUNT VII
## VIOLATIONS OF UNIFORM FRAUDULENT TRANSFER ACT

70.     The allegations of paragraphs 1 through 37 are incorporated by reference as if each allegation was repeated word for word within this count.

71.     Defendants Mike Yousif, Anthony Yousif Investment Co., and 7 Mile & Lauder LLC have transferred assets ("Transfers")they owned, some of the assets are described in paragraphs 36 and 37, above, to other members of the Yousif Criminal Enterprise, for little or no value in return for the Transfers. The transfers were made with actual intent to hinder, delay or defraud the Plaintiffs.

72.     Under the Uniform Fraudulent Transfer Act, MCLA 566.31 ct seq., Defendants Mike Yousif's, Anthony Yousif Investment Co.'s, and 7 Mile & Lauder LLC's Transfers to members of the Yousif Criminal Enterprise were fraudulent transfers as to the Plaintiffs. Pursuant to MCLA 566.38, the Plaintiffs are entitled to awards of damages against all the Defendant members of the Yousif Criminal Enterprise in the amount of the Plaintiffs' claims of $7,500,000.00 exclusive of attorney fees, costs, and if awarded, treble damages.

73.     Pursuant to MCLA 566.38, the Plaintiffs are also entitled to obtain an avoidance of the transfers of, or injunctions preventing the further transfers.

WHEREFORE, the Plaintiffs requests that this Court enter a Judgment in their favor and against the Defendants, jointly and severally, in whatever amount of damages they have sustained as a result of the actions of the Yousif Criminal Enterprise and its members, in an amount not less than $7,500,000.00, plus exemplary damages, interest, costs and attorney fees, and if awarded, treble

damages, and further to grant the Plaintiffs such other relief to which she is entitled.

**COUNT VIII**
**LEGAL MALPRACTICE AGAINST DEFENDANTS HIRSCHHORN and**
**HIRSCHHORN PC**

74.    The allegations of paragraphs 1 through 73 are incorporated by reference as if each allegation was repeated word for word within this count.

75.    Defendant Hirschhorn is an attorney licensed to practice law in the State of Michigan. He holds himself out to the public and to Plaintiff Jody Yousif as a skilled and competent attorney.

76.    Defendant Hirschhorn, through Defendant Hirschhorn PC, rendered legal services to Anthony Yousif Investment Co., and entity that Plaintiff Jody Yousif was a member of. In the capacity of attorney for Anthony Yousif Investment Co., Hirschhorn owed a duty to its members to provide legal services with the degree of care, skill, and competence that would be exercised by an attorney of ordinary learning, judgment, and skill under similar circumstances.

77.    Hirschhorn breached the duty owed by falsely notarizing and witnessing documents which stole and converted Plaintiff Jody Yousif's property as more fully described in paragraph 37, above. Hirschhorn also had a duty to inform members of the Anthony Yousif Investment Co. that Hirschhorn was a member of the Yousif Criminal Enterprise.

78.    At all times pertinent herein, Hirschhorn was an employee and owner of Hirschhorn PC, and acting on behalf of Hirschhorn PC.

79.    As a direct and proximate result of these breaches by Hirschhorn, Plaintiff Jody Yousif suffered damages, including, but not limited to, the theft and conversion of his property by the Yousif Criminal Enterprise.

WHEREFORE, Plaintiff Jody Yousif requests that this Court enter a Judgment in his favor and against Hirschhorn and Hirschhorn, jointly and severally, and award him whatever amount of

damages he sustained as a result of Hirschhorn's legal malpractice in an amount not less than $5,000,000.00, plus exemplary damages, interest, costs and attorney fees, and grant such other relief to which he is entitled.

I have read this complaint, and under oath, I swear and affirm that its allegations are true and accurate to the best of my knowledge and belief.

Jody Yousif
Dated: December 2, 2006

I have read this complaint, and under oath, I swear and affirm that its allegations are true and accurate to the best of my knowledge and belief.

Emily Yousif
Dated: December 2, 2006

Respectfully submitted,
**MUNRO AND ZACK, P.C.**

Andrew J. Munro (P30304)
Attorney for the Plaintiffs
Munro and Zack, PC
363 West Big Beaver Rd., Suite 450
Troy, MI 48084
(248) 928-9000
(248) 928-9001 facsimile
amunro@munroplc.com

Dated:  December 2, 2006

Page 31 of 32

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury of all issues triable by a jury.

Respectfully submitted,
**MUNRO AND ZACK, P.C.**

Dated: December 2, 2006

And· w J. Munro (P30304)
Attorney for the Plaintiffs
Munro and Zack, PC
363 West Big Beaver Rd., Suite 450
Troy, MI 48084
(248) 928-9000
(248) 928-9001 facsimile
amunro@munroplc.com

44 (Rev. 11/04)

## CIVIL COVER SHEET   County in which this action arose __Wayne__

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
Emily Yousif and Jody Yousif

**DEFENDANTS**
Mike Yousif, et al.

**(b)** County of Residence of First Listed Plaintiff    Oakland
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Oakland
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Andrew J. Munro (P30304)
Munro and Zack, PC
363 W. Big Beaver Road, Ste. 450, Troy, MI 48084, (248) 928-9000

Attorneys (If Known)
Unknown

### II. BASIS OF JURISDICTION   (Select One Box Only)

☐ 1   U.S. Government
Plaintiff

☑ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Select One Box for Plaintiff
(For Diversity Cases Only)                                    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Select One Box Only)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Prod Liability
☐ 320 Assault, Libel Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

Case: 2:06-cv-15389
Assigned To: Rosen, Gerald E
Referral Judge: Whalen, R. Steven
Filed: 12-05-2006 At 11:36 AM
CMP YOUSIF VS YOUSIF, ET AL (LE)

Liability
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**BKRPTCY**
8 USC 158
☐ al
57

**RIGHTS**
ts

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☑ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Access to Justice
☐ 950 Constitutionality of State Statutes

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### V. ORIGIN   (Select One Box Only)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☑ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C.§1961(1)
Brief description of cause:
Civil damages resulting from Defendants' racketeering activity.

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**
$7,500,000.00(x3)

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☑ Yes   ☐ No

### VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE   Friedman

DOCKET NUMBER   2:04cv72933

DATE
December 5, 2006

SIGNATURE OF ATTORNEY OF RECORD
P30304

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

## PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?          ☑ Yes
                                                                      ☐ No

If yes, give the following information:

Court: _U.S. District Court, Eastern District of Michigan_____

Case No.: _2:04cv72933_____

Judge: _Bernard Friedman_____


2.        Other than stated above, are there any pending or previously          ☑ Yes
          discontinued or dismissed companion cases in this or any other        ☐ No
          court, including state court? (Companion cases are matters in which
          it appears substantially similar evidence will be offered or the same
          or related parties are present and the cases arise out of the same
          transaction or occurrence.)

If yes, give the following information:

Court: _Oakland County Circuit Court_____

Case No.: _03-683688-DO_____

Judge: _Michael Warren_____


Notes :

Paragraphs 1 and 2, above, relate only to Plaintiff Emily Yousif and some of her current claims against Mike
Yousif and Anthony Yousif. Previously, a settlement in the case referenced in paragraph **1**, above, was
reached and the federal case dismissed. However, the terms of the settlement agreement, which were
incorporated into the Divorce Judgment entered in the case referenced in paragraph 2, above, provided for
reinstatement under certain conditions. As it relates to the instant matter, Mike Yousif      failed to meet all
the required payments under the  settlement agreement, which, at paragraph 12, requires reinstatement:
          "The Federal Rico Claim Case # 04-72933 shall be dismissed upon the payment of all funds to Emily
          as outline above. If necessary, the matter may be dismissed without prejudice while Emily is
          awaiting receipts of the funds. However, both Mike and Anthony shall sign stipulations for
          reinstatement of the cause of action without cost and attorney fees. Said stipulation shall be held in
          escrow by Emily's attorney's. ***Upon payment in full to Emily or upon the expiration of the (90)
          days as outlined above the matter shall be dismissed with prejudice and without cost. If payments
          (sic) are not in full to Emily and after the expiration of the (90) days, the matter shall be
          reinstated via the stipulation noted above and any attorney fees and costs associated therewith
          shall be paid by Mike Yousif;***" Emphasis added.